**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| **SHANE VENABLE** | **CASE NO. 6:25-CV-02100** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **COMMISSIONER OF SOCIAL SECURITY** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## REPORT AND RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the parties' briefs, and the applicable law, the Court recommends that the Commissioner's decision be affirmed.

## Administrative Proceedings

Claimant, Shane Venable, fully exhausted his administrative remedies before filing this action in federal court. He filed an application for disability insurance benefits, alleging disability beginning on June 1, 2022. His application was denied. He then requested a hearing, which was held on February 20, 2025, before Administrative Law Judge Stephanie Smoke. The ALJ issued a decision on March 14, 2025, concluding that Claimant was not disabled within the meaning of the Social Security Act from the claimed disability onset date through the date of the decision. (Rec. Doc. 5-1, p. 18-27). Claimant requested that the Appeals Council review the ALJ's decision, but the Appeals Council found no basis for review. (p.

5). Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of judicial review. *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005). Claimant then initiated this action, seeking review of the Commissioner's decision.

**Summary of Pertinent Facts**

Claimant was born on February 8, 1978. He was 44 years old on the alleged disability onset date and 47 years old at the time of the ALJ's decision. He has an eleventh-grade education (special education classes) and a driver's license. He is literate and able to do simple math. (Rec. Doc. 5-1, p. 40). His employment history includes heavy equipment operator and dump truck operator. (p. 42). He alleges that he has been disabled since June 1, 2022, due to back pain, as well as short-windedness following a heart attack and high blood pressure. Many of his medical issues stem from a work accident in March 2022, when he fell out of a tractor, injuring his right leg and knee. According to Claimant, workers' compensation denied his claims for back surgery, and he remains in significant pain. (p. 47-48). His medical history also includes a left elbow surgery in 2005 after a wreck, resulting in the inability to completely straighten his arm. (p. 52). The medical records in the record reveal the following pertinent history:

- Sporadic cardiology follow-up records between 2016 and Jan. 2022 show that Claimant complained of shortness of breath, with a noted history of old myocardial infarction, coronary artery disease, stenting and hypertension dyslipidemia. (p. 299-335).

- Claimant was referred to orthopedist Dr. Blanda in October 2022 for right knee pain following a March 2022 work incident in which he slipped while climbing up the steps of a tractor, tumbling a couple of times, and suffering immediate right knee pain and later back and left thigh pain. He was placed on light duty for two weeks and then told to return to full duty by the company doctor. When he advised the company he needed more time off, he was terminated. He reported a prior work injury to his right knee in 2011, but he treated conservatively with medications and physical therapy and returned to work with no problems. He was walking with crutches. Dr. Blanda prescribed a knee brace and ordered an MRI. (p. 366-69). By the next follow up in November 2022, he had been unable to do an MRI due to pain and claustrophobia. He was having significant back pain, and his knee was buckling. He was diagnosed with acute medial meniscus tear and sent for a CT arthrogram of his knee since he could not tolerate the MRI. (p. 370-71). By December 2022, treatment for his knee, but not his back, had been approved. (p. 373-74). He continued to suffer from low back pain, without treatment other than medication due to lack of workers compensation approval. (p. 376-77).

- In April 2023, Claimant reported to Dr. Blanda with low back pain. Examination showed moderate back tenderness, right leg pain with straight leg raise, weakness in the right leg with flexion and extension, and numbness and tingling in the right leg. (p. 475-77). Dr. Blanda ordered CT scans. A May 1, 2023 CT of his thoracic spine revealed spondylosis but no fractures, dislocations, osseous destructive lesions, or evidence of canal stenosis or neural foraminal impingement. A CT of his lumbar spine revealed mild spondylosis but no evidence of fracture, dislocation, osseous destructive lesion, high grade canal stenosis, or neural foraminal impingement. (p. 467-68).

- In April 2023, Claimant presented to Dr. Thomas Fincke for a state disability office consultation. Claimant stated he was unable to maintain gainful employment due to back, knee, and neck issues, and heart attack. He reported low back pain since 2009 which had gotten progressively worse and was managed with medications, rest and avoidance behavior reported to be mildly effective. His neck pain began in 2013 and he had done some physical therapy. His cardiac issues began in 2015 and was managed by a cardiologist. He reported that his cardiac issues restricted his exertional efforts. For his knee injury, sustained in the work incident, he had been diagnosed with an ACL

and meniscus injury for which he had treated conservatively with medications and physical therapy. Physical exam showed an obese male in no acute distress who did not use an assistive device for ambulation. He had no muscle asymmetry, atrophy or involuntary movements; tenderness to palpation along entire right knee, thoracic, and lumbar spine, without any effusion or swelling, or spasms. The straight leg test was negative bilaterally. He had a limping gait, was able to stand on tiptoe and heels, with mild unsteadiness on unassisted tandem walk. He would not attempt to try to squat. Grip strength and other physical findings were normal. A lumbar xray revealed mild to moderate spondylosis with anterior vertebral endplate osteophytes and lower level facet arthropathy at L4/5 and L5/S1. Dr. Thomas Finke stated that Claimant was minimally cooperative with exam, especially regarding examination of the right knee due to subjective pain. He was wearing a brace and was reluctant to remove it or allow for any testing. Thus, Dr. Finke was unable to speculate regarding any limitations. Based on his exam and the objective evidence, he opined that Claimant should be able to sit for a full workday, with ambulatory breaks, and be able to tolerate at least sedentary work. He opined regarding some limitations on walking, standing, and lifting and stated that Claimant's lumbago was likely associated with his obesity, with symptoms improved with weight loss. Dr. Finke believed the limitations would be short-lived, with knee pain being the greatest limiting factor and which had not yet been treated. (p. 396-99).

- In May 2023, Claimant reported to Dr. Blanda with continued low and thoracic back pain. He also reported his right knee was still uncomfortable and he had difficulty walking. Claimant declined a referral for injections but would agree to physical therapy. (p. 478-80).

- Dr. Adam Terry provided a Second Medical Opinion regarding Claimant's right knee on May 30, 2023. Though the report only concerned the right knee, Dr. Terry noted that Claimant had been involved in an auto accident in March 2023 and had suffered mid-back pain, following which a CT scan did not show any significant stenosis. Physical exam showed that he walked with an antalgic gain with stiff knee gait on the right. When sitting in a chair, his knee was flexed to approximately 70 degrees, but when coaxed onto the exam table, he limited flexion to 45 degrees, saying "there was nothing else you can get out of it," which was in contrast to Dr. Terry's observations. Following other similar observations, such as the absence of acute trauma and effusion and that he "actually shouts out in pain during examination" and allowed only 30-40 degrees of flexion throughout the exam, Dr. Terry stated: "I think there is,

unfortunately, some magnification going on." Further exam did show pathologic laxity representing an ACL and MCL injury at some point. Claimant's BMI was 43-44, placing him in the morbid obese category. In response to questions posed by the Certified Medical Consultants, Dr. Terry noted that he was concerned about Claimant taking both Norco and oxycodone on the same day for pain which would be better managed with anti-inflammatories. He found it difficult to conclude whether Claimant could return to full duty, especially due to Claimant's inflated symptomatology for potential secondary gain. Nevertheless, he felt that Claimant was unable to return to his previous level of work due to laxity within the knee, which, if preexisting the work injury, could have contributed to the fall and would dictate that he could return to his former position (as he had been doing such work in that condition). If the injury was caused by the fall, on the other hand, he could not return to his former position. (p. 408-411).

- In his June 2023 follow up with Dr. Blanda, Claimant reported that his knee was more painful since the SMO and that his physical therapist had stopped because of increasing knee pain. Dr. Blanda recommended that he try to get an MRI of his right knee (though Claimant remained skeptical due to severe claustrophobia). If an MRI was positive for an ACL tear, he would probably be recommended for an ACL reconstruction. (p. 481-82).

- A July 2023 MRI of his right knee revealed chronic complete ACL rupture without tibial translation, radial tear at the posterior horn of the lateral meniscus and mild central free edge fraying at the body of the lateral meniscus with mild distal patellar tendinosis. (p. 496-97).

- By August 2023, Claimant had finally undergone the MRI of his right knee, which revealed a complete ACL tear and a tear of the lateral meniscus. After obtaining the MRI reports from Claimant's pre-existing injury, Dr. Blanda noted that the injury appeared to have been pre-existing as both reports were similar, indicating ACL rupture and tearing of lateral meniscus on both. Thus, Dr. Blanda concluded the problems were pre-existing and subjectively aggravated by his new injury. (p. 484-86). By September 2023, Claimant's complaints were the same, but Dr. Blanda noted that he does fairly well with the brace and medication. Dr. Blanda would continue to treat him conservatively and refer him to pain management. (p. 487-91).

- In a November 2023 psychological report, test results showed an objective basis for Claimant's reports of localized severe pain and perceived disability,

suggesting he was coping with the emotional stress fairly well. If not, his profile suggested factors in his psychological environment (such as high levels of support or secondary gain) offsetting the emotional distress that might otherwise be expected. Psychological treatment for pain management and any exaggerated perception of disability should be considered. The testing also suggested the possibility that psychological factors may be magnifying his pain complaints if not consistent with objective medical findings. Of greatest concern was that even his lowest level of pain in the prior month was judged to be intolerable. The report noted "an extreme level of perceived disability was reported," a level at higher than that seen in 99% of patients. Such patients tend to see themselves as being totally disabled with regard to most functions and activities. (p. 425-31)

- In his December 2023 cardiology follow up, Claimant complained of shortness of breath and pain in his bilateral lower extremities. He had not been taking his blood pressure medication. (p. 413)

- Dr. Blanda referred Claimant to Dr. Albert Gros for pain management in October 2023. By March 2024 Claimant reported to Dr. Albert Gros continued mid back pain and severe right knee pain. He had previously undergone physical therapy without relief. At some point Dr. Blanda had recommended knee surgery, and Dr. Ray Williams had recommended lumbar surgery, which was denied by workers compensation (though this may have been in 2009 following a prior injury). He was 5'11" and 327 pounds. Dr. Gros noted that he was doing well with current medications and recommended lovera cryo treatment of the right knee, but this was denied. Claimant was seeing Dr. Blanda for surgical evaluation of thoracic pain from osteophytosis. (p. 435-62)

- In the March 2024 note, Dr. Blanda noted that Claimant still complained of some knee pain and wore a brace for support. He had some back pain with no radiating sciatica. Dr. Blanda discussed a referral to sports medicine specialist to discuss knee reconstruction, but Claimant was unsure if he was ready to have surgery. He was thinking about settling his legal issues. (p. 493-94)

Claimant testified that he is unable to do much, that he cannot walk, sit for too long, or walk more than 50 feet without getting winded. (p. 45). He testified that he has constant headaches, from three days up to an entire week. (p. 48). He mostly

stays on the couch or lays in bed, because he hurts all day long. (p. 49). His wife handles all chores, including shopping and putting on his socks. (p. 51-52; 55). Following the hearing, the ALJ found that Claimant was not disabled, because he is capable of performing sedentary work. Plaintiff now seeks reversal of the Commissioner's adverse ruling.

## Analysis

### A. Standard of Review

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Id*. (citations omitted).

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d

at 173. A court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1022. Conflicts in the evidence and credibility assessments are for the Commissioner to resolve, not the courts. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience. *Wren v. Sullivan*, 925 F.2d at 126.

**B. <u>Entitlement to Benefits</u>**

The Disability Insurance Benefit program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. See 42 U.S.C. § 423(a). See also *Smith v. Berryhill*, 139 S.Ct. 1865, 1772 (2019). Supplemental Security Income SSI provides income to individuals who meet certain income and resource requirements, have applied for benefits, and are disabled. 42 U.S.C. § 1382(a)(1) & (2). See also *Smith v. Berryhill*, 139 S.Ct. at 1772. A person is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled if his physical or mental impairment or impairments are so severe that he is unable do his previous work and considering his age, education, and work experience, cannot participate in any other kind of substantial gainful work that exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

### C. Evaluation Process and Burden of Proof

A sequential five-step inquiry is used to determine whether a claimant is disabled. The Commissioner must determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work. 20 C.F.R. § 404.1520.

Before going from step three to step four, the Commissioner evaluates the claimant's residual functional capacity by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 404.1545(a)(1). The claimant's

residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work. 20 C.F.R. § 404.1520(e).

The claimant bears the burden of proof on the first four steps; at the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy. *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016); *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Fraga v. Bowen*, 810 F.2d at 1302. If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

### D. The ALJ's Findings and Conclusions

The ALJ determined at step one that Claimant has not engaged in substantial gainful activity since June 1, 2022. This finding is supported by substantial evidence in the record.

At step two, the ALJ found that Claimant has the following severe impairments: obesity, myocardial infarction, lumbar spinal stenosis, mild degenerative changes, meniscus tear of the right knee and hypertension. (p. 20). This finding is supported by substantial evidence in the record.

At step three, the ALJ found that Claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (p. 21). Claimant does not challenge this finding.

The ALJ found Claimant has the residual functional capacity (RFC) to perform sedentary work, with limitations for occasional climbing ladders, ropes and scaffolds, frequently climbing ramps and stairs, frequently stooping, kneeling, crouching, and crawling, and avoiding hazards. Claimant challenges this finding.

At step four, the ALJ found Claimant is unable to perform past relevant work. (p. 25). Claimant does not challenge this finding.

At step five, the ALJ found a significant number of job which Claimant is capable of performing exist in the national economy such that Claimant is not disabled. (p. 25). Claimant challenges this finding.

**E. <u>The Allegations of Error</u>**

Claimant alleges the ALJ committed three general errors: 1) failing to find Claimant disabled based on medical evidence; 2) failing to award benefits based on

medical evidence and testimony; and 3) failing to give proper weight and consideration to medical experts.

**F. <u>Whether the ALJ's RFC finding is supported by substantial evidence.</u>**

The Court interprets Claimant's first two allegations of error as a general challenge to the ALJ's RFC finding, which ultimately led to the finding of non-disability. A residual functional capacity assessment "is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Perez v. Barnhart*, 415 F.3d at 462 (citing 20 C.F.R. § 404.1545(a)(1)).The ALJ is responsible for determining a claimant's residual functional capacity. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In making a finding in that regard, the ALJ must consider all of the evidence in the record, evaluate the medical opinions in light of other information contained in the record, and determine the plaintiff's ability despite any physical and mental limitations. *Martinez v. Chater*, 64 F.3d at 176. The evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983). In making a residual functional capacity assessment, an ALJ must consider all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. The

ALJ must consider the limitations and restrictions imposed by all of an individual's impairments, even those that are not severe. *Giles v. Astrue*, 433 Fed. App'x 241, 245 (5th Cir. 2011) (citing 20 C.F.R. § 404.1545).

Claimant relies on the medical records showing that his treating physicians assigned him a "no work" status due to his knee issue. While Dr. Blanda did list Claimant as "no work" status after the work incident, the records show that the knee injury was likely to heal—or at least return to pre-incident status—after treatment, but that Claimant chose not to undergo recommended treatments. After obtaining the MRI reports from Claimant's pre-existing injury, Dr. Blanda noted that the injury appeared to have pre-existed the work incident (p. 484-86), in which case Dr. Terry had suggested Claimant could return to work. By September 2023, Dr. Blanda noted that he was doing fairly well with the brace and medication, and that conservative treatment would continue. (p. 487-91). Regarding his heart issues, the records show sporadic treatment and that his issues, such as his heart attack and stenting, pre-existed the alleged onset date of disability and were present during his past employment. (p. 299-335). None of the doctors suggested that his heart issues prevented him from working.

Otherwise, Claimant relies on his own testimony regarding his purported inability to do much of anything. "It is well settled that an ALJ's credibility findings on a claimant's subjective complaints are entitled to deference[, as] the ALJ is best

positioned to make these determinations because of the opportunity to observe the claimant first-hand." *Hector v. Barnhart*, 337 F. Supp. 2d 905, 922 (S.D. Tex. 2004), citing *Falco v. Shalala,* 27 F.3d 160, 163 (5th Cir.1994). Moreover, "[t]he Act, regulations and case law mandate that the Secretary require that subjective complaints be corroborated, at least in part, by objective medical findings." *Id*., citing *Harrell v. Bowen,* 862 F.2d 471, 481 (5th Cir.1988). "[E]ven if a claimant's subjective symptoms are not fully justified by objective medical evidence, the ALJ cannot disregard them but must make a credibility finding based on the entire record." *Beck v. Barnhart*, 205 F. App'x 207, 212–13 (5th Cir. 2006), citing 20 C.F.R. § 416.929 and SSR 96–7p. Factors that the ALJ may consider in evaluating the claimant's subjective complaints include: (1) claimant's daily activities; *Falco v. Shalala*, 27 F.3d 160 (5th Cir. 1994); *Anthony v. Sullivan*, 954 F.2d 289, 296 (5th Cir. 1992); *Reyes v. Sullivan*, 915 F.2d, 151, 155 (5th Cir. 1990); (2) medication the claimant takes for pain; *Anthony v. Sullivan, supra; Villa v. Sullivan,* 895 F.2d 1019, 1024 (5th Cir. 1990); (3) degree of medical treatment; *Villa, supra; Nickerson v. Secretary of Health and Human Services*, 894 F. Supp. 279 (E.D. Tex. 8/3/1995); (4) lack of medical opinions in the record indicating the claimant is precluded from performing the level of activity indicated by the ALJ; *Villa, supra;* and (5) external manifestations of debilitating pain such as marked weight loss. *Falco, supra*; *see also* 20 C.F.R.§§ 404.1529(c)(3)(i)-(vii).

In finding Claimant capable of sedentary work, the ALJ found that Claimant's statements regarding his symptoms were not consistent with the medical evidence. The Court agrees. As outlined above, multiple physicians, including Dr. Finke and Dr. Terry, found that Claimant exaggerated his symptoms, and, as the ALJ noted, the medical records show that his physical findings (excepting the objective issues noted) were generally unremarkable. Regarding Claimant's objective issues, the records show that Claimant was generally unwilling to undergo treatment other than medication.

> "In order to get benefits, [the claimant] must follow treatment prescribed by [her] physician if th[e] treatment can restore [her] ability to work." 20 C.F.R. § 404.1530(a). If the claimant does not follow prescribed treatment without a good reason, she will not be found disabled. § 404.1530(b).

*Brashears v. Apfel*, 73 F. Supp. 2d 648, 651 (W.D. La. 1999).

Claimant did not present a good reason for not undergoing recommended treatments, such as injections and surgery. The Court finds that substantial evidence in the record supports the ALJ's RFC finding.

**G. <u>Whether the ALJ properly considered medical expert evidence.</u>**

Claimant next argues the ALJ failed to give proper weight and consideration to medical expert opinions. The ALJ's duty to weigh medical opinions is governed by 20 C.F.R. 404.1520c. Although an ALJ is no longer required to give controlling weight to a treating physician's medical opinions, the regulations state that "[w]hen

a medical source provides one or more medical opinions…, we will consider those medical opinions … from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." 20 C.F.R. § 404.1520c(a). The factors to be considered are the examining relationship, the treatment relationship, the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, supportability, consistency, specialization, and any other factor which the claimant brings to the court's attention. 20 C.F.R. § 404.1520c(c)(1-5). The two most important factors are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). With regard to supportability, the regulation states that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)…, the more persuasive the medical opinions…will be." 20 C.F.R. § 404.1520c(c)(1). With regard to consistency, the regulation states that "[t]he more consistent a medical opinion(s) … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be." 20 C.F.R. § 404.1520c(c)(2). Thus, the ALJ was required to consider all of the medical opinions, focusing primarily on the supportability and consistency of each opinion.

The ALJ rejected state medical consultants' determination that Claimant could perform light duty work, finding that the medical evidence was consistent with

sedentary work. (p. 25). The ALJ found consultative examiner Dr. Fincke's opinion that Claimant could perform at least sedentary work more consistent with the medical evidence (p. 24). Importantly, Claimant's treating physicians, Dr. Blanda and Dr. Terry, are not inconsistent with Dr. Fincke's opinion and support the ALJ's RFC determination. The Court finds that the ALJ properly considered the medical expert evidence and did not err in the finding of non-disability.

## Conclusion and Recommendation

For the foregoing reasons, this Court recommends that the Commissioner's decision be AFFIRMED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual

findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[1]

Signed in Lafayette, Louisiana, this 8th day of September, 2026.



CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE

---

1 See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1).